Gmail

The UPS Store <ups4264@gmail.com>

## Copy of Federal Civil Rights Lawsuit to the board of directors supervisor
1 message  Solano County Case #2:22-cv-01687-TLN-CKD

**Clarence bell** <clarenecebell54@att.net>  Mon, Jan 30, 2023 at 9:24 PM
To: ups4264@gmail.com

To whom it may concern: Copy of the Federal Civil Lawsuit we delivered by USPS To the Board Of Directors Supervisors extended from court case Abyimeal Lewis case#J43383 where Judge Donna Stashyn made a ruling without having all the evidence against foster parents in question the Bell Family legal counsel for wrongful removal of Abyimeal Lewis which this 6yr child had been a resident inside the Bells Family Home for 18 months where he has developed a physiological bond with the Bell Family this 6yr just had neosurgery from a sinus effects was attack by one of CPS placements with a misdiagnosis mental disorder ADHD maternal grandmother told CPS that her grandson was suffering from ODD also mention that any family dealing with a child disorder should attend therapy with this child the results can ruin the family home !also allowed into the bells home without the proper hearing device! This 10yr also had physical violence with 2 foster teen after CPS investigation with other foster children! This 10yr shouldn't have been eligible for placement with other children in the home! This 10yr while in the bells household mention interest in fire arm he also mentioned his family involvement with gang members! Which his parents have a substance abuse problem CPS place my home and my children in immediate danger & haven't taken any responsibility for their mismanaged of these children Thank You! Kind Regards Clarence Bell
Sent from my iPhone

*Clarence Bell*
*7208 Queen Isabella Ct.*
*Vallejo, Ca 94591*

**FILED**

FEB 17 2023

CLERK, U.S. DISTRICT COURT,
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

California Department of Social Services

Case #2:22-CV-01687-TLN-CKD

# PROPOSED DECISION

Adopted by the Director
February 14, 2023

California Department of Social Services

## Hearing No. 104861607

*In the Matter of Claimant(s):*

**Clarence Bell**
**7208 QUEEN ISABELLA CT,**

dmeyerslaw@gmail.com

I submit the attached proposed decision for review and recommend its adoption.

*[signature: Patrick T. Cooney]*

**Patrick Cooney**
Administrative Law Judge
Cert Date: **February 9, 2023**

## Hearing Information

*Hearing Date:* February 06, 2023 01:00 PM
*Release Date:* February 15, 2023
*Aid Pending:* N/A
*Issue Codes:* 1702-1
*Language:* ENGLISH

*Responsible Agency:* CDSS Legal

Attendees

| **Attendee Type** | **Attendee** |
|---|---|
| *Authorized Rep:* | David Meyers, Law Office of David Meyers |
| *Hearing Rep:* | Lisa Wiggins, CDSS Legal |

Case: 2:22-cv-01687-TLN-CKD

# SUMMARY

Solano County incorrectly rescinded respondent C.'s and respondent E.'s Resource Family Approval. [1702-1]

# FACTS

On October 31, 2022, respondent C. and respondent E. (collectively respondents) submitted an appeal contesting Solano County's rescission of respondents' Resource Family Approval (RFA). Respondents are a married couple.

Respondents, respondents' Authorized Representative, Solano County's attorney, Solano County's RFA social worker, and Solano County's RFA supervisor appeared by telephone for the hearing on February 6, 2023. Solano County's RFA supervisor was an observer. Solano County submitted a Position Statement with exhibits that was received as evidence.

At the hearing, the issue was determined to be Solano County's rescission of respondents' RFA.

Solano County's Position
The County approved respondents' RFA application on April 1, 2019.

The County rescinded respondents' RFA by a Notice of Action dated October 28, 2022. The County explains in the Notice of Action that respondents' RFA is rescinded because:

1. Sometime on or about April 7, 2022, respondent C. yanked a foster child and shoved the child into his bedroom, where the child hit the bed frame and suffered a bruise to the child's side. This incident occurred in the presence of at least one other foster child.

2. On multiple dates unknown, but sometime between December 2021 and April 2022, respondents yelled at and swore at foster children.

3. On or about April 11, 2022, respondent E. swore at a foster child.

4. On or about April 11, 2022, respondent C. made false statements to County personnel investigating the incident that occurred on or about April 7, 2022, when respondent C. denied pushing, grabbing, or shoving the foster child into his bedroom.

The County contends these facts are violations of:

State of California
CDSS State Hearings Division

Hearing No. 104861607-710
Page 2

Case 2:22-cv-01687-TLN-CKD   Document 9   Filed 02/17/23   Page 4 of 13

CASE# 2:22-CV-01687-TLN-CKD

1. Engaging in conduct that poses a risk or threat to the health and safety, protection, or well-being of a child or nonminor dependent or other individual. (Writ. Dir. §§ 9-06A, 9-06B, 10-01A(b).)

2. Violation of a child or nonminor dependent's personal rights, or failure to ensure a child or nonminor dependent is accorded personal rights. (Welf. and Inst. Code, § 16001.9 and Writ. Dir. §§ 10-01A, 11-08.)

3. Failure to cooperate or comply with applicant requirements, with ongoing requirements to maintain approval, or making false or misleading statements to the County or Department. (Writ. Dir. §§ 9-02, 10-01A(b), 11-08, 11-17.)

Identification of Individuals

Respondent C. and respondent E. are husband and wife.

Child 1 was a 10-year-old foster child on April 7, 2022, and at that time living with respondents.

Child 2 was a six-year-old foster child on April 7, 2022, and at that time living with respondents.

Child 3 was a 13-year-old foster child on April 7, 2022, and at that time living with respondents.

Solano County Testimony

The County's RFA social worker (social worker) testified for the County.

The County's social worker acknowledges the decision to rescind respondents' RFA is based on the interviews of child 1, child 2, and child 3 that were in the home at the time of the incident.

The social worker testified these interviews were conducted by the County's emergency response social worker and she did not speak with the emergency response social worker, or the three children, about what happened. The social worker relied on the written documentation prepared by the emergency response social worker.

The social worker explains the County practice is not to reinterview children regarding incidents, so the social worker did not interview the three foster children. The social worker explains based on the review of the emergency response social worker's written information; the County decided to rescind respondents' RFA. Child 1, child 2, and child 3 are no longer in respondents' home.

The social worker also explains a Corrective Action Plan was not considered in this case because respondent C. did not admit to any misconduct. The County's perspective is a Corrective Action Plan was not appropriate since respondents did not acknowledge wrongdoing.

Case # 2:22-CV-01687-TLN-CKD

## Solano County Documents

The County includes with its Position Statement the Solano County Investigative Report (Report) with a submission date of April 13, 2022, and the interview summaries prepared by the emergency response social worker initiated after the County received an anonymous complaint regarding respondents.

### Interview of Child 1

Child 1 was interviewed on April 11, 2022. First, child 1 showed the emergency response social worker what is described as about a two-inch circular bruise of purple color about half-way between child 1's left hipbone and ribcage. The Report states the bruise was photographed. The photographs are not part of the record. Child 1 also showed the emergency response social worker a dime-sized scar on child 1's left ribcage with a pale pink center and brown outer circle.

Child 1 told the emergency response social worker that these injuries were obtained when child 1 was thrown into a bunkbed during an incident on April 7, 2022, although there is no documentation from a medical provider opining the injuries could only have been caused by the allegations against respondent C. Child 1 reported child 3 was aware of the bruise he sustained. The interview summary does not show child 1 was asked to describe what was happening before or after this incident.

Child 1 also reported respondents often yell and cuss at the minors in the home and the cussing is most often directed at child 1 and child 2. When child 1 was asked if he felt safe, child 1 stated he does and he doesn't. Child 1 told the emergency response social worker that on April 11, 2022, respondent E. cussed at child 1 and respondent E. said, "f*** you, I am so f****** glad you are leaving." Child 1 then ran back into the home and did not disclose further information.

The emergency response social worker reports that child 1 had to be redirected multiple times. The emergency response social worker writes that she saw child 1 hit child 2, spit out food multiple times, and heard child 1 call multiple individuals names such as b**** and c***.

### Interview of Child 2

On April 11, 2022, child 2 was interviewed by the emergency response social worker while the emergency response worker was at respondents' home. However, the interview of child 2 was not completed and based on the information from child 1 and child 3, regarding physical discipline and consistent yelling and verbal threats, the decision was made to remove child 2 from respondents' home.

After the removal of child 2 and while child 2 was at a County office, the interview of child 2 continued. Child 2 stated he witnessed respondent throw child 1 into the bunkbed. However, child 2 did not know what happened before or following the incident. Child 1 reported he is often fearful of the respondents because they yell, cuss, and clap loudly at the minors.

/././.

CASE #2:22-CV-01687-TLN-CKD

### Interview of Child 3

Child 3 was interviewed on April 11, 2022. Child 3 stated that on April 7, 2022, she observed respondent C. become upset by something child 1 had said. Child 3 further stated respondent C. grabbed child 1, then "yanked" child 1 and stated, "Do you think I'm playing with you?" Child 3 reported she then saw respondent C. shove child 1 into child 1's bedroom where he hit the bedframe of the wooden bunk bed. Child 3 then stated she saw the bruise on child 1's side and stated the bruise became progressively worse throughout the course of several days.

Child 3 denied experiencing physical discipline in respondents' home. Child 3 does feel respondents were "verbally pushing her down."

### Interview of Respondent E.

On April 11, 2022, respondent E. was interviewed by the emergency response social worker. Respondent stated she was home at the time of the incident. However, respondent E. was not entirely certain about what happened.

Respondent E. remembers child 1 chasing child 2 upstairs. Respondent E. believes respondent C. ran after child 1 and child 2 and attempted to pull them apart from each other. Respondent E. opined that while respondent C. was pulling them apart this might have caused child 1 to slip. Respondent E. does not believe child 1 was pushed into the bed.

Respondent E. emphasizes child 1 was very challenging and respondents had to intervene to deescalate child 1. Respondent E. also reported they never tried to hurt child 1. Instead, respondents had to stop child 1 from hurting other minors in the home.

The Report does not make any findings regarding any of the allegations made by the three foster children against respondent E. The Report does not show the emergency response social worker asked respondent E. about child 1's allegations that on April 11, 2022, respondent E. cussed at child 1.

### Interview of Respondent C.

Respondent C. was interviewed by the emergency response social worker on April 11, 2022. Respondent C. reported child 1 was in his bedroom when he engaged in a physical altercation with child 2. Respondent C. reported child 1 tripped over a mat on the bedroom floor and fell into the bunkbed frame. Respondent C. denied pushing, grabbing, or shoving child 1 into the bedframe.

Respondent C. stated there were significant concerns with child 1's behaviors and described child 1 as "loud, rude, and disrespectful." Respondent C. stated tensions began to rise when child 1 was placed in the home. Specifically, respondent C. advised the emergency response social worker that child 1 got physical with child 2 and respondent C. had to intervene many times. Respondent C. denied any physical discipline and explained the primary method of discipline is turning off the Wi-Fi in the home.

When the emergency response social worker expressed concern regarding conflicting

CASE #2:22-CV-01687-TLN-CKD

stories between respondents and the three children, respondent C. stated he understood the concerns. However, respondent C. continued to deny pushing or shoving child 1 and stated it was an accidental injury.

The emergency response social worker concluded the allegation of physical abuse of child 1 is substantiated against respondent C. The emergency response worker contends there is "evidence to suggest" child 1 sustained injury because of respondent C.'s actions because child 1 had a two-inch circular bruise of dark blue and purple color along with a dime-sized scar above the bruise.

The emergency response social worker determined the allegation of physical abuse on behalf of child 3 is unfounded against respondent C. The emergency response social worker determined that based on the information obtained through interviews and the investigation there is no evidence to suggest child 3 experienced physical discipline while in respondents' home and denied experiencing physical discipline. Child 3 expressed concern for the safety of the minors placed in the home due to reports of frequent yelling and cussing in the home.

In addition, the emergency response social worker noted child 1, child 2, and child 3 had consistent stories which show respondent C. "yanked and shoved" child 1 into a wooden bunkbed frame. While the emergency response social worker acknowledged respondent C. expressed problems regarding child 1's behaviors, the emergency response social worker believes there is concern regarding respondent C.'s use of physical discipline on dependent children.

The Report does not make any findings regarding any of the allegations made by the three foster children against respondent E.

The County also includes as an exhibit to its Position Statement respondents' appeal. In the appeal respondents write child 1 engages in violent behavior by fighting with other foster children.

Solano County's position is the three children gave consistent accounts of what happened to child 1 so respondent C. is at fault for child 1's injuries, respondents yelled and swore at the three children in their care, and respondent C. made false statements regarding what happened with child 1.

Respondent's Position

Respondent C.'s Testimony
Respondent C. describes child 1 as violent and unstable. The respondent testified child 1 attacked child 2 at least two times before the April 7, 2022, incident and attacked other children in the home three other times. Respondent C. testified he told the County by telephone about child 1's conduct. However, respondent C. was not able to provide specific information as to specific times he told the County about child 1's conduct.

Respondent testified that as to the specific incident in this case that child 1 was hitting child 2 and child 1 tripped over a mat and hit the bedframe. Respondent C. testified he

was trying to separate child 1 from child 2. Respondent C. testified he did not physically discipline child 1, child 2, or child 3. Respondent does confirm he turns off the Wi-Fi as a discipline method when child 1, child 2, or child 3 are misbehaving.

Respondent C. also explains during his testimony that his wife, respondent E., has ALS and has difficulty using her limbs.

Respondent E.'s Testimony
Respondent E. testified that about a month ago her health declined. Respondent E. is not sure what is wrong. Respondent E. had difficulty speaking during the hearing but testified her memory is fine.

Respondent E. testified she does not recall yelling at foster children. Respondent E. testified she does not recall respondent C. yelling at foster children. Respondent E. testified she might have cussed or swore at a foster child about three years ago.

Findings of Fact
After considering all the documentation submitted with Solano County's Position Statement and the testimony given at the hearing it is found:

1. Respondent C.'s testimony that child 1 was hitting child 2 and respondent C. was breaking up a fight between child 1 and child 2, and child 1 tripped is accepted as true. In making this finding, the administrative law judge carefully considered that the child 1, child 2, and child 3 told the emergency response social worker that respondent C. "yanked and shoved" child 1 and the emergency response social worker substantiated the allegation of physical abuse as to respondent C. However, while the emergency services social worker determined there was "evidence to suggest" child 1 sustained injuries because of respondent C.'s actions, Solano County did not submit the photographs taken of child 1's injuries to support the description of the injuries or a medical opinion that child 1's injuries are consistent with the descriptions provided by child 1, child 2, or child 3. Also the emergency services social worker did not testify.

2. This finding is further based on the emergency services social worker's direct observations that the emergency services social worker saw child 1 hit child 2 and heard child 1 calling multiple individuals names such as b**** and c***. The emergency services social worker's direct observations support respondents' testimony that child 1 fought with other children, including child 2, and respondent C. was separating child 1 and child 2 at the time of incident on April 7, 2022. Respondents also wrote on their appeal that child 1 was violent.

3. This finding is also based on Respondent C.'s interview with the emergency services social worker when Respondent C. understood the emergency social worker's concerns but explained at the time of respondent C.'s interview it was an accidental injury. Respondents cooperated with the emergency services social worker's investigation.

4. It is further found that the County has not shown by a preponderance of the evidence that between December 2021 and April 2022, respondents yelled at and swore at foster children or that respondent E. swore at a foster child on April 11, 2022. Although child 1 and child 2 told the emergency response social worker that respondents yell and cuss at them, the only specific date the County contends this occurred on was April 11, 2022, and the only witness was child 1 and the emergency response social worker did not make any findings that respondent E. mistreated any of the three foster children and the Report does not show respondent E was asked about child 1's allegation that respondent E. cussed at child 1. In addition, respondents cooperated with the emergency response social worker's investigation, understood the reason for the investigation, and denied yelling and cussing at child 1 and child 2. For these reasons, the County has not met its burden to show by a preponderance of the evidence that between December 2021 and April 2022, respondents yelled at and swore at foster children or that respondent E. swore at a foster child on April 11, 2022.

5. It is further found respondent C. did not make false statements on April 11, 2022, to County personnel investigating the incident that occurred on or about April 7, 2022, when respondent C. denied pushing, grabbing, or shoving child 1. This finding is based on respondent C.'s testimony that this did not occur and that child 1 and child 2 were fighting. This finding is further based on the emergency services social worker's direct observations that the emergency services social worker saw child 1 hit child 2. The emergency services social worker's direct observations support respondents' descriptions that child 1 fought with other children, including a fight between child 1 and child 2 on April 7, 2022. This finding is further based on respondent E.'s statement to the emergency services social worker that is consistent with respondent C.'s account to the emergency services social worker, yet the County did not allege respondent E. made false statements.

6. For all these reasons, it is further found Solano County did not meet its burden to show respondents engaged in conduct that poses a risk or threat to the health and safety, protection, or well-being of a child or nonminor dependent or other individual; did not meet its burden to show respondents violated a child or nonminor dependent's personal rights or failed to ensure a child or nonminor dependent is accorded personal rights; and did not meet its burden to show respondent C failed to cooperate or comply with applicant requirements, with ongoing requirements to maintain approval, or make false or misleading statements to the County.

**LAW**

Denying or Rescinding Resource Family Approval

A County or the Department may deny a Resource Family application or may rescind the approval of a Resource Family, and the Department may exclude an individual from

Case # 2:22-CV-01687-TLN-CKD

any Resource Family home. (Welf. & Inst. Code, § 16519.61, subd. (a); (Cal. Dept. of Social Services, RFA Writ. Dir., v. 8, § 10-01A, subd. (b), November 1, 2022.)

If a County denies an application, rescinds the approval of a Resource Family, or denies or rescinds a criminal record exemption, the County shall provide the applicable individual with due process as specified in Welfare and Institutions Code section 16519.5 et seq. and Article 12 of the Written Directives. (Cal. Dept. of Social Services, RFA Writ. Dir., v. 8, § 10-01A, subd. (c)(1), November 1, 2022.)

A County or the Department may deny a resource family application or rescind the approval of a resource family, and the Department may exclude an individual from any resource family home, for any of the following reasons: (a) violation of Welfare and Institutions Code section 16519.5, the Written Directives, regulations adopted pursuant to the Welfare and Institutions Code section 16519.5, or any applicable law; (b) aiding, abetting, or permitting the violation of Section 16519.5, the Written Directives, or regulations adopted pursuant to Welfare and Institutions Code section 16519.5, or any applicable law; (c) conduct that poses a risk or threat to the health and safety, protection, or well-being of a child, another individual, or the people of the State of California; (d) the conviction of the Resource Family Applicant, parent, or associated individual at any time before or during the approval of a crime described in Health and Safety Code section 1522; (e) engaging in acts of financial malfeasance, including, but not limited to, improper use or embezzlement of the money or property of a child, fraudulent appropriation for person gain of money or property, or willful or negligent failure to provide services; or (f) any other reason specified in the Written Directives or regulations adopted pursuant to Welfare and Institutions Code section 16519.5. (Welf. & Inst. Code, § 16519.61.)

As noted in Welfare and Institutions Code section 16519.5, subdivision (f), the reasons for denying an application, rescinding an approval, or excluding an individual are not exclusively listed in that Welfare and Institutions Code. As set forth below, additional reasons are listed in the Written Directives.

The County may act to deny an application or rescind an approval, and the Department may exclude an individual from presence in any Resource Family home, for any of the following reasons:

> (1) Violation of Welfare and Institutions section 16519.5, the Written Directives, or any applicable law.
>
> (2) Aiding, abetting, or permitting the violation of any applicable law or the Written Directives.
>
> (3) Conduct that poses a risk or threat to the health and safety, protection, or well-being of a child, nonminor dependent, another individual, or the people of the State of California.
>
> (4) The conviction of an applicant, Resource Parent, or associated individual, at any time before or during their approval, of a crime as defined in Health and Safety Code section 1522.

State of California
CDSS State Hearings Division

Hearing No. 104861607-710
Page 9

Case 2:22-cv-01687-TLN-CKD   Document 9   Filed 02/17/23   Page 11 of 13

CASE #2:22-CV-01687-TLN-CKD

(5) Engaging in acts of financial malfeasance, including but not limited to, improper use or embezzlement of the money or property of a child or nonminor dependent or fraudulent appropriation for personal gain of money or property, or willful or negligent failure to provide services.

(6) Failure to meet application requirements.

(7) Failure to meet Resource Family qualifications.

(8) Inability to provide adequate references.

(9) Failure or refusal to participate in interviews as specified in the Written Directives, Article 6, section 6-05 (a).

(10) Failure to complete pre-approval or annual training, cardio-pulmonary resuscitation (CPR) and first aid training, specialized training, or other training required by the County.

(11) Failure to receive a criminal record clearance or exemption.

(12) Failure to meet the Home Environment Assessment standards.

(13) Family evaluation results or other information indicates an inability to act as a reasonable and prudent parent or to provide or failure to ensure the care and supervision of a child or nonminor dependent.

(14) Failure to cooperate or comply as specified in Written Directives, section 11-17.

(15) False or misleading statements made to a County to obtain or maintain Resource Family Approval.

(16) Conduct that would indicate the individual is not of reputable or responsible character.

(Cal. Dept. of Social Services, RFA Writ. Dir., v. 8, § 10-01A, subd. (b), November 1, 2022.)

Corrective Action Plan

If a County determines a Resource Family is not conforming to an applicable statute, regulation, or the Written Directives, and the identified deficiency may be corrected, then the County shall issue a written corrective action plan. (Cal. Dept. of Social Services, RFA Writ. Dir., v. 8, § 9-07, subd. (a), November 1, 2022.

Admissibility of Evidence
Evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to relying on in the conduct of serious affairs. The administrative law judge shall not be bound by rules of procedure or evidence applicable in judicial proceedings.

Although evidence may be admissible, the Administrative Law Judge shall consider the nature of the evidence in assessing its probative value. (Man. Pol. & Proc., § 22-050.2-.3.) The Administrative Law Judge shall be permitted to exclude evidence, which is irrelevant, cumulative, or unduly repetitious. (Man. Pol. & Proc., § 22-050.2.)

Welfare and Institutions Code section 16519.62 states:

(a) The out-of-court statements of a child under 12 years of age who is the subject or victim of an allegation at issue constitutes admissible evidence at an administrative hearing conducted pursuant to this article. The out-of-court statement may provide the sole basis for a finding of fact if the proponent of the statement provided the statement to all parties prior to the hearing and the adjudicator finds that the time, content, and circumstances of the statement provide sufficient indicia of reliability. However, the out-of-court statement shall not be admissible if an objecting party establishes that the statement is unreliable because it was the product of fraud, deceit, or undue influence.

(b) This section shall not be construed to limit the right of any party to the administrative hearing to subpoena a witness whose statement is admitted as evidence or to introduce admissible evidence relevant to the weight of the hearsay evidence or the credibility of the hearsay declarant.

Right to a State Hearing

There is no right to a state hearing regarding child custody and child welfare service issues while that child is under the jurisdiction of the juvenile court. All issues regarding the child's custody shall be heard by the juvenile court, including but not limited to those issues left to the discretion of the county welfare department or probation department by the juvenile court. (Man. Pol. & Proc., § 22-003.14.)

A claimant who has been denied home approval to provide foster care to a child, as described in Manual of Policies and Procedures section 22-001(c)(2)(H), or who has received a denial, rescission, or exclusion under the Resource Family Approval process pursuant to Welfare and Institutions Code sections 16519.5 et seq., has a right to a state hearing to dispute the home approval decision, but no right to a state hearing to dispute the placement or removal of a child. (Man. Pol. & Proc., § 22-003.14.141.)

Child Abuse Central Index (CACI) Grievance Procedures

Within five business days of submitting an individual's name to the Department of Justice (DOJ) for listing on the CACI pursuant to Section 31-501.4, the following forms shall be sent to the individual of his/her last known address:

- The Notice of Child Abuse Central Index Listing (SOC 832),

State of California
CDSS State Hearings Division
Case 2:22-cv-01687-TLN-CKD   Document 9   Filed 02/17/23   Page 13 of 13
Hearing No. 104861607-710
Page 11

Case #2:22-CV-01687-TLN-CKD

- Grievance Procedures for Challenging Reference to the Child Abuse Central Index (SOC 833), and
- Request for Grievance Hearing (SOC 834).

## CONCLUSION

Solano County has the burden of proof by a preponderance of the evidence relating to the matters set forth in the Notice of Action dated October 28, 2022. (Cal. Dept. of Social Services, RFA Writ. Dir., v. 8, § 12-20, subd. (a), November 1, 2022.)

In this case it was found the County did not meet its burden relating to the matters described in the Notice of Action dated October 28, 2022. For these reasons, the County's action to rescind respondents' RFA is not sustained.

This decision does not prohibit the County from investigating respondent E.'s medical condition and assessing whether respondents continue to meet applicable RFA standards.

## ORDER

The appeal is granted.

Solano County shall rescind its action dated October 28, 2022, rescinding respondent C.'s and respondent E.'s Resource Family Approval.